UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DALE ROBINSON,

        Plaintiff,

        v.                            Case No. 23-C-1622

CANDACE WARNER, et al.,

        Defendants.

**DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO RECONSIDER**

On March 31, 2026, the Court granted Defendants' motion for summary judgment and dismissed this case. ECF Nos. 42 & 43. The Court concluded that, based on the totality of the record, no reasonable jury could conclude that Defendants failed to use their medical judgment and were deliberately indifferent when treating Plaintiff Dale Robinson's flat feet at the New Lisbon Correctional Institution between November 11, 2014 and September 11, 2018. ECF No. 42. The Court outlined in detail four years of continuous medical care Plaintiff received for his flat feet—*i.e.*, numerous in-person medical appointments; numerous referrals to off-site foot experts (i.e. surgeons, orthotists, and podiatrists); several medical restrictions (i.e. use of a bike, lower bunk, and lower tier); different types of shoes (i.e. work boots, high-tops, Velcro straps); different types of inserts (i.e. gel and memory foam); shoe gears; shoe adjustments; custom orthotics; physical therapy; Tylenol; a tub to soak feet; a warm compress; the option for a talonavicular joint anesthetic and steroid injection; a Class III request for surgery; and communication with BHS regarding the possibility of surgery—all of which was supported with explanations on why certain treatment options were used at a particular time. *Id*. The Court also

noted that Plaintiff caused some of the delay in treatment by rejecting in-person medical appointments, rejecting orthotics, refusing the talonavicular joint anesthetic and steroid injection because he was not in pain on the day it was scheduled, and being angry and argumentative with staff. *Id.* The Court concluded that Plaintiff may have wanted surgery immediately when he initially saw Dr. Williams in 2014—and that he did not like trying four years of conservative treatment options before receiving surgery from Dr. Law in 2018—but that did not establish an Eighth Amendment claim because he had no right to demand specific treatment. *Id.*

On April 28, 2026, Plaintiff filed a motion for reconsideration under Federal Rule of Civil Procedure 59(e). ECF Nos. 44 & 45. "Rule 59(e) allows a court to alter or amend a judgment only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence." *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008) (citing *Sigsworth v. City of Aurora*, 487 F.3d 506, 511-12 (7th Cir. 2007)). A "manifest error" is not demonstrated by the disappointment of the losing party; it is the wholesale disregard, misapplication, or failure to recognize controlling precedent. *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). Whether to grant a motion to amend judgment "is entrusted to the sound judgment of the district court." *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996).

Plaintiff's motion for reconsideration merely reiterates arguments that the Court has already considered and rejected through summary judgment briefing; and he has failed to identify any manifest error of law or newly discovered evidence. *See* ECF No. 44. First, Plaintiff (again) raises issues with Dr. Williams' conclusion that surgery was not immediately necessary in 2014. Plaintiff states that her decisions were "illogical" and his need for immediate surgery was "obvious" when he saw her in 2014. But as explained in the prior order, Dr. Williams explained her treatment decisions; it was clear she used her medical judgment in arriving at her conclusions;

and Plaintiff's disagreement with Dr. Williams' use of medical judgment does not establish an Eighth Amendment violation. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). This is true even if Dr. Law disagreed with her and created a different treatment plan. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

Next, Plaintiff argues that various people were lying about the efforts they made to investigate surgical options. For example, Dr. Hoffman allegedly told Plaintiff that Dr. Williams was the only doctor who could perform surgery. Plaintiff also suspects that Dr. Hoffman never actually contacted Dr. Rongstad and Dr. Guiao to discuss possible surgical options. Plaintiff states that these would all be disputes of fact for the jury. But, as explained in the prior order, these purported factual disputes are not material given that Plaintiff did not have a constitutional right to surgery. *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Plaintiff had a constitutional right to medical care, which he received continuously for four years before receiving surgery in 2018. Plaintiff reiterates that he was in pain for 20 years—since 1995—so surgery was the only reasonable option, and any other treatment options were either ineffective, easier and less efficacious, or delaying medical care without exercising medical judgment. But Defendants' treatment options were explained using medical judgment. And Plaintiff was in and out of custody during that 20-year period of time. Plaintiff could have organized surgery for his flat feet at any point in time while he was out of custody. But it appears he wanted the Department of Corrections to subsidize his foot surgery, which required him to exhaust conservative treatment options first. The Court concluded that four years of conservative treatment options while in custody—when Plaintiff reported relief from conservative treatment options from time to time—was not unreasonable and did not constitute deliberate indifference. Plaintiff's motion to reconsider is nothing more than disagreement with that conclusion.

3

Plaintiff also notes that an expert opinion is not necessary if a layperson could understand the issues involved. Plaintiff appears to make this argument in connection with the Court's observation that medical records from Dr. Law's consultation and surgery in 2018 were not produced as a part of summary judgment briefing. But the lack of medical records from Dr. Law was not the basis for denying summary judgment. The Court denied summary judgment based on the record as a whole showing continuous medical care. The Court simply mentioned the lack of medical records from Dr. Law to address Plaintiff's repeated assertion that all Dr. Law had to do was take "one look at his feet" to know that any treatment other than surgery would be inappropriate. The Court pointed out that Plaintiff's interpretation of Dr. Law's thought process was not persuasive; and his argument would only be persuasive if Dr. Law actually so noted through medical records or an affidavit. The Court also explained that, even assuming those records were produced and Dr. Law disagreed with Dr. Williams' conclusion regarding the need for surgery, disagreement among medical professionals on the use of medical judgment is not deliberate indifference. *Pyles*, 771 F.3d at 409.

Finally, Plaintiff's entire case appears to boil down to the argument that, if a jury simply looked at pictures of his feet from before surgery, they would easily conclude that any option other than surgery was deliberate indifference. But Plaintiff never provided the Court with pictures of his feet to assess that argument at summary judgment. Plaintiff appears to blame ICE Miller and Warden Strahota for the lack of pictures of his feet. But Plaintiff had flat feet for over 20 years, and he was in and out of custody during that time, so he was not limited by one institution's alleged refusal to take pictures of his feet. "Summary judgment is the 'put up or shut up' moment in a lawsuit." *Siegel v. Shell Oil Co.,* 612 F.3d 932, 937 (7th Cir.2010) (quoting *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir. 2003)). Plaintiff did not provide enough evidence from

4

which a reasonable jury could find in his favor. Therefore, the Court will deny the motion for reconsideration.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for reconsideration (ECF No. 44) is **DENIED**.

Dated in Milwaukee, Wisconsin this 9th day of July, 2026.

STEPHEN C. DRIES
United States Magistrate Judge